## A03A1652. GROSS v. THE STATE.
(585 SE2d 671)

ELDRIDGE, Judge.

Jack Curtis Gross was found not guilty by reason of insanity of charges of reckless conduct in 1980. Gross was ordered into the custody of the Department of Human Resources for treatment. In accordance with OCGA § 17-7-131, Gross has remained involuntarily committed. Gross has applied for release to the State Court of Chatham County numerous times since his confinement; each application has been denied by the trial court. Gross now appeals from the trial

court's order, entered on June 11, 2002, denying his most recent motion for release. In his sole enumeration, Gross alleges that pursuant to OCGA §§ 17-7-131 (f)[1] and 37-3-1 (9.1)[2] the evidence was sufficient to require his release from involuntary confinement. We disagree, and affirm.

At a release hearing, the trial court must

> consider expert and other evidence presented at the release hearing, and contained in the trial record, on the issue of sanity or insanity. Regarding expert evidence, the [trial] court must carefully consider all credible relevant evidence on either side. Finally, the [trial] court must weigh the evidence in light of the defendant's burden to overcome the presumption [of continuing insanity] by a preponderance of the evidence.

(Emphasis omitted.) *Nagel v. State*, 262 Ga. 888, 892-893 (427 SE2d 490) (1993). On appeal, the standard of review of the sufficiency of the evidence as to a factfinder's finding of insanity in a criminal case "is whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was sane." (Citation and punctuation omitted.) *Nagel v. State*, 264 Ga. 150 (442 SE2d 446) (1994).

In this case, the evidence shows that Gross is a paranoid schizophrenic. At the release hearing, Gross testified on his own behalf and stated that he desired to be released and that, if released, he would continue to take his medication because he liked the way it made him feel. Gross further testified that upon release he would live with his wife and children in Fort Isabella. However, Gross does not have a home in Fort Isabella and has not had any contact with his ex-wife and children in years.

While Gross testified that he did not plan to hurt anyone if released, he testified that if the President of the United States called him, he would protect the President. At the release hearing, when

---

[1] "OCGA § 17-7-131 (f) entitles [a defendant] to release if he show[s] by a preponderance of the evidence that he no longer meets the inpatient civil commitment requirements of Chapter 3 of Title 37. Those requirements are set forth in OCGA § 37-3-1 (9.1)." *Nagel v. State*, 264 Ga. 150, 153 (442 SE2d 446) (1994) (Sears, J., dissenting).

[2] Under OCGA § 37-3-1 (9.1), a person meets the criteria for inpatient involuntary treatment if the person "is mentally ill and . . . presents a substantial risk of imminent harm to [themselves] or others, as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to that person or other persons[,] or . . . [the person] is so unable to care for [their] own physical health and safety as to create an imminently life-endangering crisis[,] and . . . [the person] is in need of involuntary inpatient treatment."

asked if the trial judge ordered him not to have a gun, but the President called him, would he abide by the trial judge's order, Gross replied that he would obey the President because he had more power than the trial judge. Gross later modified his testimony and stated that if the trial judge had more power than the President, he would listen to the trial judge, but that he would want to know why the trial judge ordered him not to have a gun. Later in his testimony, Gross stated that if he were released, he would go hunting. When asked at this point whether he would follow the trial judge's order if directed to remove all guns from his home, Gross replied, "No," and stated that he would have to know the reason why. Throughout the hearing, no matter how the question was framed Gross would not unequivocally state that he would abide by a trial court's order not to have a gun.

Dr. John Prather, a psychiatrist in the medium security forensic unit at Georgia Regional Hospital, who has treated Gross for the last three years, testified that Gross has not made any appreciable improvements in the core symptoms of his schizophrenia. Prather testified that Gross has multiple fixed delusions which affect his judgment and insight to a significant degree. Prather testified that Gross continues to believe that he is a Secret Service agent working at the direction of the President of the United States and that upon his release, Gross believes that he will continue working with the Secret Service. Prather further testified that Gross continues to believe that he has a home, a wife, and children in Fort Isabella, even though he has had no contact with his ex-wife and children in years. Prather went on to testify that Gross requires constant monitoring and supervision; that in his reality, the world is a threatening place; that he continues to believe others plot against him and that his life is in danger; and that he has threatened to kill his brother on more than one occasion because he thinks his brother is plotting to kill him when he comes to visit him at the hospital. Prather opined that Gross could very possibly cause harm to himself or others while acting on one of his delusions.

Gross currently takes an anti-psychotic medication to reduce agitation, aggression, and disorganized thinking; a medication which helps with anxiety and abnormal movements he has developed; and a medication for thyroid problems. Prather opined that he did not feel that Gross would continue to take his medications if released. Prather based this opinion on the fact that Gross is not cooperative in his treatment for diabetes mellitus. Prather went on to testify that Gross does not feel that he has a medical or psychiatric illness that requires treatment.

Prather additionally testified that Gross thinks he owns the hospital and often becomes angry and frustrated because he feels that

his ownership should entitle him to more privileges than he has at this time. Currently, Gross has only partial privileges at the hospital. He is allowed off the unit for on-campus events only when accompanied by staff. Gross is considered by staff to be an AWOL risk. When Gross is frustrated, he verbally threatens the staff. On occasion, he has raised his hand or attempted to hit members of the staff, but has never injured anyone.

After reviewing the evidence in the light most favorable to the State, we are satisfied that the state court judge, as a rational trier of fact, could have found that Gross failed to prove by a preponderance of the evidence that he was no longer insane and should be released from civil commitment.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 14, 2003.

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., Solicitor-General, Jennifer L. Parker, Assistant Solicitor-General*, for appellee.

